S.F. and D.F. *v.* ARKANSAS DEPARTMENT of HEALTH and HUMAN SERVICES

CA 07-735 274 S.W.3d 334

Court of Appeals of Arkansas
Opinion delivered February 6, 2008

*Jeff Rosenzweig*, for appellants.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for the minor child.

DAVID M. GLOVER, Judge. S.F. and D.F. have appealed from a juvenile court's adjudication order finding their adopted son to be dependent-neglected. They raise a novel legal argument on appeal — that they were not at fault because they followed an attorney's advice before they placed the child in harm's way. We affirm the circuit court's decision.

Appellants are the biological grandparents of G.A., born on May 14, 2005, to their daughter, K.A., and her husband, T.A. The court found G.A. to be dependent-neglected on October 3, 2005, as a result of life-threatening abuse that he suffered while in his biological parents' care. He suffered multiple retinal hemorrhages, multiple brain hemorrhages (resulting in permanent damage), an injury to his clavicle, and a fracture of his tibia. With the biological parents' consent, appellants adopted G.A. on August 1, 2006, and the juvenile case was closed.

In February 2007, DHS opened another investigation because appellants had returned the child to his biological parents' home. DHS filed a dependency-neglect petition on March 8, 2007. Appellants responded that they had relied on the advice of counsel and stated that the court's earlier findings that the child had been abused were erroneous.

A hearing was held on May 11, 2007. Appellants stipulated that the child had been in K.A.'s care for a period of time and in the presence of T.A., who was in the military and in Iraq at the time of trial. They argued that they had relied upon the advice of the biological parents' attorney in returning the child to his biological

mother. The attorney testified that he had represented K.A. and T.A. in the juvenile case and that he had advised them, after the adoption, that they could legally have contact with the child if appellants agreed. He could not remember whether appellants were present during those conversations. He admitted that his legal advice was erroneous. *See* Arkansas Code Annotated section 9-27-353 (Supp. 2007), which provides in relevant part:

> (e)(1) It shall be the duty of every person granted custody, guardianship, or adoption of any juvenile in a proceeding pursuant to or arising out of a dependency-neglect action under this subchapter to ensure that the juvenile is not returned to the care or supervision of any person from whom the child was removed or any person the court has specifically ordered not to have care, supervision, or custody of the juvenile.

> (2) This section shall not be construed to prohibit these placements if the person who has been granted custody, guardianship, or adoption obtains a court order to that effect from the juvenile court that made the award of custody, guardianship, or adoption.

> (3) Failure to abide by subdivision (e)(1) of this section is punishable as a criminal offense pursuant to § 5-26-502(a)(3).

K.A. testified that her parents had returned the child to her in August 2006 and that T.A. had stayed at their home while he was on temporary leave. She said that her attorney had advised her, "after the adoption was final, that we were through with him and that T. could basically walk up to the DHHS with G. and wave him around." She said that her parents were present on some of the occasions when her attorney gave her legal advice.

S.F. stated that she had not known she was doing anything wrong by permitting K.A. to take care of G.A. because she had relied on the attorney's advice. She also said that, although she would abide by the court's orders, she did not believe that K.A. or T.A. had actually harmed the child.

Emily Hudkins, an investigator with DHS, testified that, when she first talked to appellants in February 2007 about the child's location, they were dishonest and would not admit that he was with K.A.; eventually, they admitted that they had given him to her. She stated that she was involved in the previous juvenile-court case, during which she advised appellants that they could not return the child to T.A. or K.A.

Kay Higginbotham, a caseworker with DHS, testified that, at a "staffing" on June 23, 2006, she discussed appellants' decision to adopt the child and made it clear that K.A. could only have supervised visitation with G.A.; that he could never be returned to her; and that T.A. could have no contact with him. She said that appellants knew that the child could not go back to his biological parents and that they did not indicate that they planned to return him.

Appellants' attorney urged the court to interpret the juvenile code as permitting a child to be adjudicated dependent-neglected without anyone's being "at fault" and asked the court not to make a finding of fault. He argued that the "advice-of-counsel" defense, which has been raised in malicious-prosecution and criminal cases, should apply here. In response, appellee's attorney argued that there was no excuse for not following the law; that the attorney giving the erroneous advice was not appellants' attorney; and that appellants had apparently planned from the beginning to return the child to his biological parents, even though they represented otherwise in the adoption proceeding.

From the bench, the court stated that appellants had ne-glected G.A. and had left him in a risky situation:

> The F.s, in the opinion of this Court, made a decision to disregard the fact that their daughter and son-in-law had been parents of a child who was removed · pursuant to a finding of dependency/neglect. They chose to disregard the fact that there was no certainty as to which parent had inflicted the physical abuse, that either or both parents were still potentially the perpetrator of the physical abuse. I've heard no testimony today that eliminates K. as a potential perpetrator. The Court made it clear back in 2005 that both parents were considered as potential perpetrators. The grandparents chose to rely on second hand legal advice, potentially some direct legal advice, from somebody who was not their attorney, to assume that because a DHS case was closed and because an adoption decree had become final, that they were no longer required to comply with the conditions that had been in place, clearly by their own admission, during the interlocutory period, which included no unsupervised contact with K.; nor any contact with the father. And to suddenly believe that well, because the adoption is final, that those conditions were no longer valid. That assumption ignores the provisions of Arkansas Code 9-27-353, which provides:

> It should be the duty of every person granted custody, guardianship, or adoption of any juvenile in a proceeding pursuant to or arising out of a dependency neglect action, under this subchapter to insure that the juvenile is not returned to the care or supervision of any person from whom the child was removed.

> The F.s are not attorneys, but they are deemed to be bound by the law of the State of Arkansas. The Court believes that the decision by the F.s to allow G. to, basically, be returned to the custody and supervision of his mother, and thereby at times to his father, does under the Arkansas Juvenile Code, under the sections previously cited, constitute neglect, and I find that G is a dependent/neglected juvenile for those reasons.

In the adjudication order entered on May 22, 2007, the court found the child to be dependent-neglected because appellants had placed him back in the home of K.A., where T.A. had contact with him. The court stated that, although appellants claimed that they had relied on the advice of an attorney that, once the adoption was finalized, they could do whatever they wished, they disregarded the previous findings of the court that the biological parents had committed dependency-neglect and that the abuse could have been caused by either or both parents. The court found that appellants had violated Ark. Code Ann. §§ 9-27-303(36)(A)(vi), 9-27-303(36)(A)(vii), and 9-27-353(e)(1) (Supp. 2007). The court stated that the goal would be continued placement of the child in appellants' home and that K.A. would have supervised visitation for no more than two three-hour visits per week. The court stated that T.A. could have no contact with G.A. but could, when he returned from Iraq, ask the court to modify the visitation order. The court directed appellants to attend counseling and instructed DHS to submit a case plan. Appellants filed this appeal.

Appellants argue on appeal that the trial court erred in refusing to accept their advice-of-counsel defense and ask us to reverse that decision and to modify the circuit court's order accordingly. They cite no cases in the context of juvenile proceedings to support this argument but contend that the advice-of-counsel defense, as applied in malicious-prosecution and criminal cases, should apply here. In malicious-prosecution cases, the advice-of-counsel defense applies if the parties have made a full disclosure of all relevant facts to competent counsel and have acted

in bona fide reliance thereon. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). In criminal cases, the defense may apply if the person has fully disclosed all material facts to his attorney before seeking advice and has actually relied on his counsel's advice in the good-faith belief that his conduct was legal. *Covey v. U.S.*, 377 F.3d 903 (8th Cir. 2004).

■ We decline to apply the defense in this case. First, appellants did not have an attorney-client relationship with the attorney representing the biological parents. Further, the trial court's order made no finding as to any level of intent on appellants' part, which was appropriate given that a finding of dependency-neglect does not require a showing of mens rea. An advice-of-counsel defense is not recognized in juvenile proceedings, in which the touchstone is the juvenile's best interest, not the defendant's intention. *See* Ark. Code Ann. § 9-27-302 (Supp. 2007). Because the juvenile code focuses on the effect of the parents' actions on the child, an attorney's advice to the parents is not relevant to whether the child is dependent-neglected. Even the most well-intentioned behavior, if it threatens the child's well-being, can result in an adjudication of dependency-neglect.

The only possible effect of a ruling in appellants' favor would be to perhaps reduce the stigma of the dependency-neglect finding. We refused to take such a step in *Richardson v. Arkansas Department of Human Services*, 86 Ark. App. 142, 143-44, 165 S.W.3d 127, 128 (2004):

> We first address Richardson's argument that this case is not moot because the relief she seeks is the erasure of the judicial finding of parental unfitness. While we might agree, as does DHS, that such a finding might be "stigmatizing," we believe that this argument reflects a fundamental misunderstanding of the purpose of our appellate jurisdiction. It is not enough that Richardson disagrees with a finding of the trial court; for us to review it, there must exist a justiciable controversy that our decision will settle. *See Mastin v. Mastin*, 316 Ark. 327, 329, 871 S.W.2d 585, 586 (1994). To put it another way, a case is moot when any decision rendered by this court will have no practical *legal* effect on an existing legal controversy. *K.S. v. State*, 343 Ark. 59, 31 S.W.3d 849 (2000). (Emphasis added.) Here, Richardson has already regained custody of A.C., so a decision on the merits, either affirming or reversing the trial court, will have absolutely no legal effect on the issue of A.C.'s custody.

> We are aware that there are exceptions to the rule that the appellate courts of Arkansas do not decide cases that are moot, render advisory opinions, or answer academic questions. *Campbell v. State*, 300 Ark. 570, 781 S.W.2d 14 (1989). The most notable exceptions are cases that involve the public interest or tend to become moot before litigation can run its course, or situations where a decision might avert future litigation. *Id.* However, given the fact that this case turns not on a principle of law, but rather on the adequacy of the evidence to support a trial judge's findings of fact, we hold that the instant case does not embrace an issue of public interest. Furthermore, we do not believe that adjudications of dependent neglect are necessarily of such short duration that they will evade appellate review. Finally, we do not believe that our decision today could help avert future litigation in this case. If DHS indeed does again become involved in A.C.'s life, which we certainly cannot foresee, it will be because of facts and circumstances that are not presently before us. We are not unsympathetic to the terrible tragedy that has befallen Ms. Richardson and A.C. Nor are we unmindful that a finding of parental unfitness is an especially stinging blow to a person who already has suffered so much. However, decisions of an appellate court can do nothing to assuage the personal pain of all those involved, nor serve as an imprimatur of Ms. Richardson's parenting abilities.

The same reasoning applies here.

■ We also hold that the trial court did not clearly err in finding that appellants violated Ark. Code Ann. § 9-27-303(36)(a)(vi) and (vii). The burden of proof in a dependency-neglect proceeding is a preponderance of the evidence. *Donahue v. Ark. Dep't of Health & Human Servs.*, 99 Ark. App. 330, 260 S.W.3d 334 (2007). Although our review is de novo, we will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* The definition of "neglect" in Ark. Code Ann. § 9-27-303(36) includes:

> (vi) Failure, although able, to assume responsibility for the care and custody of the juvenile or to participate in a plan to assume the responsibility; or

> (vii) Failure to appropriately supervise the juvenile that results in the juvenile's being left alone at an inappropriate age or in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm.

On this record, we cannot say that the trial court's finding that appellants neglected the child is clearly erroneous.

Affirmed.

BIRD and VAUGHT, JJ., agree.