2010 Ark. App. 244

**David ASHCROFT, Appellant**

**v.**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
**Appellee.**

**No. CA 09–1115.**

Court of Appeals of Arkansas.

March 10, 2010.

Carrol Ann Hicks, Hicks & Associates, P.A., North Little Rock, for Appellant

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, Tabitha Baertels McNulty, Department of Human Services, Little Rock, for Appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant David Ashcroft appeals the adjudication order entered by the Pulaski County Circuit Court finding that his two children are dependent-neglected. For reversal, he argues that the trial court's finding of dependency-neglect is clearly against the preponderance of the evidence and that the trial court erred in limiting cross-examination of his son, C.A. Appellant also contends that the trial court erred in denying his motion for a continuance. We find no merit in any of appellant's arguments and affirm.[1]

Appellant and his wife, Teri Ashcroft, are the parents of two sons, C.A. and M.A., whom they adopted as infants. Both boys are eleven, but M.A. is slightly older. C.A. is hearing and speech impaired, and he attends the Arkansas School for the Deaf in Little Rock. On April 16, 2009, C.A. informed a teacher that appellant had touched him in an inappropriate manner. The teacher alerted the principal, who then summoned the school counselor. Following her conversation with C.A., the counselor placed a call to the child-abuse hotline. As a result, an investigator with the Crimes Against Children Division of the Arkansas State Police interviewed C.A. that afternoon at the school. C.A., through a sign-language interpreter, reported that appellant touched his private parts either while drying C.A. after a shower or while waking him in the mornings. C.A. also advised that he told his mother about appellant's improper behavior.

That evening, personnel from the Arkansas Department of Human Services (DHS) visited the home to conduct a safety assessment. The employees learned that appellant was the children's primary caretaker because Teri was ill with lupus. They placed a seventy-two-hour hold on the children because appellant, the alleged offender, was in the home and because they had concerns about Teri's failure to protect C.A. and her apparent inability to care for the children. The trial court entered an emergency order removing the

---

1. Appellant filed several notices of appeal that were not timely. However, the supreme court granted appellant's motion for a belated appeal. *Ashcroft v. Ark. Dep't of Human Servs.*, 2009 Ark. 461, 2009 WL 3162287.

children from the home and later found probable cause for the children to remain in DHS custody.

The trial court scheduled the adjudication hearing for June 2, 2009. The hearing was not completed on that date, and the trial court continued the remainder of the hearing to June 10, 2009. The court heard the testimony of C.A.'s teacher, the school principal, and the counselor about the various disclosures that C.A. made to them about the alleged abuse. In |₃addition, these witnesses related that C.A., a fifth-grader, was a good student who possessed average intelligence and who did not exhibit any behavioral problems. Also, the witnesses acknowledged that the school showed the students a film on the topic of "good touches" and "bad touches."

Craig Taylor, who conducted the safety assessment of the home, testified that appellant provided for the boys' everyday needs and that Teri appeared weak and used a cane due to her illness. Appellant was more fluent in sign language than either Teri or M.A., and consequently, appellant did most of the communicating with C.A. Taylor stated that Teri denied knowing anything about the abuse and that she said, if C.A. told her about it, she might have misunderstood because she was not adept at using sign language. Taylor testified that Teri displayed an accusatory attitude toward appellant during the visit and that Teri advised him that she and appellant "had not had a marriage in years." Taylor opined that C.A. was old enough to dry himself without assistance after bathing.

Lakeshia Hendricks, the investigator with the state police, testified that she completed her investigation on May 14, 2009, and that she made a true finding substantiating the allegation of sexual abuse perpetrated by appellant. Hendricks did not substantiate a finding of neglect against Teri because of her limited ability to communicate with the child.

C.A. testified with the assistance of two interpreters, Laney Yates and Flint Fears. Prior to C.A.'s testimony, Yates informed the court that she was a full-time staff interpreter for the Administrative Office of the Courts and that she was certified by the Arkansas Supreme Court |₄and by the Registry of Interpreters for the Deaf. She said that Fears was a deaf specialist and a native interpreter of American Sign Language. Yates testified that they worked together as a team and that this facilitated the interpretation process by having both a hearing and a deaf interpreter work in tandem.

C.A., who is five-feet, seven-inches tall and weighs 150 pounds, testified that appellant touched him inappropriately when appellant awakened him in the morning or while drying him after a shower. C.A. stated that the abuse happened three to five times between the years 2001 and 2009 and that two incidents took place in his bed and that two incidents occurred in the bathroom. C.A. testified that, on one occasion, appellant came into the bathroom and said that he wanted to help dry him. C.A. testified that appellant grabbed his buttocks in the process. C.A. said that, in April 2009, he was in bed when appellant touched his head, torso, hip, groin area, and "all over the front." C.A. also said that appellant lightly touched his penis multiple times. C.A. stated that some of the touches were through his clothing but that others were not. He testified that the touches made him feel uncomfortable and that he had learned that he was not supposed to be touched in that manner. C.A. said that he told his father to stop. Finally, C.A. stated that he understood the gravity of the situation and that he was being "completely honest" with the court.

Appellant testified that C.A. was a heavy sleeper and that it was often difficult to wake him in the morning. Appellant described a routine in which he first attempts to awaken C.A. by turning the light switch on and off. He said that, if that does not wake C.A., he rubs C.A.'s head. If C.A. still does not stir, appellant said that he pulls back the covers and scratches C.A.'s back, rubs his shoulders, and pats C.A. on his underwear-clad bottom. Appellant further testified that it was necessary for him to help C.A. with drying after a shower because C.A. would not dry himself completely. Appellant stated that he had never touched C.A. in a sexual manner. He surmised that C.A. wanted to live in the dorm at school and that C.A. accused him of abuse to fulfill that desire. Appellant also speculated that C.A. did not comprehend the difference between good touches and bad touches.

M.A. testified, as did Teri. M.A. stated that appellant had not touched him inappropriately, and he said that he did not believe C.A.'s allegation of abuse. Teri testified that C.A. never told her that appellant had touched him in a way that made him feel uncomfortable. She hoped that the allegation was not true but stated that, if she had to choose which one was being truthful, she would choose C.A. because appellant had lied to her about having an extramarital affair. The trial court also heard the testimony of two witnesses who vouched for appellant's good character.

In the adjudication order, the trial court found that appellant touched C.A. inappropriately on his buttocks and penis. The court observed that C.A. was too large to be helped with drying. The court also found it relevant that C.A. and appellant were the same size and that appellant admitted that he helped C.A. with drying after a shower. In finding C.A.'s testimo-

ny truthful, the court noted that evaluating the child's credibility presented a special challenge because his testimony was elicited through interpreters. However, the court found that it was able to assess C.A.'s demeanor, and the court was persuaded that the child was being truthful because of the forcefulness with which he recounted certain events. The trial court noted that there were conflicts within C.A.'s testimony, but the court found that C.A. was credible despite the inconsistencies, which the court attributed to the fact that C.A. does not possess normal communication skills. The court also found that C.A. made an effort to communicate appellant's behavior to Teri and that she failed to protect the child. Finally, the court believed M.A.'s testimony that appellant did not touch him inappropriately, but the court found M.A. to be at risk of harm for the same abuse suffered by C.A. Appellant brings this appeal from the adjudication order. Teri has not appealed this decision.

Appellant's first argument on appeal is that the trial court erred in finding that he sexually abused C.A. Essentially, he argues that C.A.'s testimony was not worthy of belief Appellant points to inconsistencies in C.A.'s testimony and also argues that his testimony was rendered unreliable by the use of two interpreters. Appellant concedes that he may have accidentally touched C.A.'s private parts when drying him or waking him, but appellant argues that he did not touch C.A. for the purpose of sexual gratification.

Adjudication hearings are held to determine whether the allegations in the petition are substantiated by the proof. Ark. Code Ann. § 9–27–327(a)(1) (Repl.2009). A dependent-neglected juvenile includes a child who is at substantial risk of serious harm as a result of sexual abuse. Ark. Code Ann. § 9–27–303(18)(A)(iii) (Repl. 2009). The term "sexual abuse" includes

sexual contact by a caretaker to a person younger than eighteen years of age. Ark. Code Ann. § 9–27–303(51)(C)(i). Under the juvenile code, "sexual contact" means any act of sexual gratification involving touching, directly or through clothing, of the sex organs, buttocks, or anus of a juvenile, or the breast of a female juvenile. Ark.Code Ann. § 9–27–303(52)(A)(i). Direct proof that an act was done for sexual gratification is not required if it can be inferred that the desire for sexual gratification was a plausible reason for the act. *Rounsaville v. State,* 374 Ark. 356, 288 S.W.3d 213 (2008).

■■■ Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark.Code Ann. § 9–27–325(h)(2)(B) (Repl.2009). We will not reverse the trial court's findings from a dependency-neglect adjudication unless they are clearly erroneous. *Brewer v. Arkansas Dep't of Human Servs.,* 71 Ark.App. 364, 43 S.W.3d 196 (2001). In reviewing a dependency-neglect adjudication, we defer to the trial court's evaluation of the credibility of the witnesses. *Id.* This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the circuit judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interests of the children. *Hardy v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 751, 351 S.W.3d 182.

■■■ Before addressing appellant's argument, we must consider the attorney ad litem's contention that appellant's challenge to the finding of dependency-neglect is moot. The ad litem asserts that the finding of dependency-neglect will not be affected by appellant's argument because Teri did not appeal the adjudication order. It is true that the focus of an adjudication hearing is on the child, not the parent, and that a finding of dependency-neglect may occur without reference to which parent committed the acts or omissions leading to the adjudication. *Broderick v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 771, 358 S.W.3d 909. That is not to say, however, that one parent's decision not to appeal necessarily renders the other parent's appeal moot. A case is moot when any decision rendered by this court will have no practical legal effect on an existing legal controversy. *S.F. v. Ark. Dep't of Human Servs.,* 101 Ark.App. 236, 274 S.W.3d 334 (2008). In this case, the trial court found that appellant sexually abused C.A. This finding formed the basis of the trial court's ruling that the child was dependent-neglected. On appeal, appellant challenges the finding that he was the perpetrator of the abuse, and if he were to prevail, our reversal would undermine the basis for the finding of dependency-neglect and thus impact the course of the proceedings below. Moreover, we have held that a parent's failure to appeal the rulings made in an adjudication order precludes appellate review of those rulings in an appeal from a subsequent order. *Lewis v. Ark. Dep't of Human Servs.,* 364 Ark. 243, 217 S.W.3d 788 (2005); *White v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 609, 344 S.W.3d 87; *Dowdy v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 180, 314 S.W.3d 722; *Causer v. Ark. Dep't of Human Servs.,* 93 Ark.App. 483, 220 S.W.3d 270 (2005). For these reasons, we do not consider the issue moot. Consequently, we hold that Teri's decision not to appeal does not prohibit appellant from seeking review of this matter.

■■■ Turning to the merits of appellant's argument, the trial court expressly found C.A.'s testimony to be credible, even in light of inconsistencies in his testimony. The court observed the child's demeanor and found that the child was truthful in

stating that appellant inappropriately touched his private parts. Because of his disability, C.A. communicates by using sign language, and by necessity the parties were required to elicit his testimony through interpreters skilled in that field. Appellant voiced no objection or concerns about this process, and we are unable to conclude that C.A.'s testimony was inherently unreliable based on the use of interpreters. Given our deference to the trial court in such matters, we are not willing to second-guess the trial court's determination that C.A. presented credible testimony. As noted above, direct proof of sexual gratification is not necessary in that such a purpose can be inferred from the circumstances. C.A. stated that appellant touched him inappropriately on his genitals and buttocks in a manner that made him feel uncomfortable. We are not persuaded that the trial court's finding of sexual abuse is clearly against the preponderance of the evidence.

■ Next, appellant contends that the trial court erred in limiting his cross-examination of C.A. The record reflects that C.A. testified at the end of the day on June 2 and at the beginning of the hearing on June 10. On June 10, the court began the hearing with its questioning of C.A. However, before the hearing commenced, the court made it clear to the parties that any follow-up questioning was not to be a repetition of questions previously asked and answered by the child, who was extensively and exhaustively examined by the parties on the previous hearing date. During appellant's recross-examination of the child following the court's questions, the court interrupted the examination when it considered appellant's counsel to be questioning the child about matters that he was examined upon at the prior hearing. Specifically, counsel questioned the child as to whether the abuse occurred while appellant was waking him in the mornings. Nevertheless, the court allowed counsel to ask the question, and the child answered it.

Appellant complains on appeal that the trial court erred by limiting his cross-examination, claiming that the trial court deprived him of due process. Appellant did not raise an objection at the hearing on this or any other basis. We have long held that we will not consider evidentiary arguments raised for the first time on appeal, and we decline to do so here. *Ark. Dep't of Human Servs. v. Jones,* 97 Ark.App. 267, 248 S.W.3d 507 (2007).

■ Appellant's last point is that the trial court erred in denying his motion for a continuance. Appellant moved for a continuance at the outset of the June 2 hearing seeking additional time to obtain the investigatory file and audiotaped interview of the child from the state police. The trial court denied the motion. The trial court noted the statutory time constraints for holding an adjudication hearing and observed that it was his task to determine what took place and that whatever information might be found in the file would be of little benefit.

■ The granting or denial of a motion for continuance is within the sound discretion of the trial court, and that court's decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Jones–Lee v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 160, 316 S.W.3d 261. Additionally, the appellant must show prejudice from the denial of a motion for continuance. *Smith v. Ark. Dep't of Human Servs.,* 93 Ark.App. 395, 219 S.W.3d 705 (2005). By statute, dependency-neglect hearings are required to take place within sixty days of the probable cause hearing. Ark.Code Ann. § 9–27–327(a)(2) (Repl.2009). This time frame is mandatory, rather than discretionary.

*See Neves da Rocha v. Ark. Dep't of Human Servs.*, 93 Ark.App. 386, 219 S.W.3d 660 (2005).

We find no abuse of discretion. Given the statutory time limit, a trial court has little latitude in postponing an adjudication hearing. The record also reflects that the state police completed its investigation on May 14, almost a month before the adjudication hearing. In terms of diligence, appellant did not state when he made the request to the state police for the file and audiotape, nor did he disclose what efforts he made to procure them. We also note that the trial court did not finish the hearing as anticipated on June 2 and that a week elapsed between the first and second trial dates. The record does not show that appellant made any further effort to obtain the desired information between the two hearings. In addition, appellant has demonstrated no prejudice from the denial of the motion. For these reasons, we conclude that the trial court did not err in denying the motion for a continuance.

Affirmed.

PITTMAN and BAKER, JJ., agree.