SLIP OPINION

# ARKANSAS COURT OF APPEALS

### DIVISION II
### No. CV-15-258

| | |
|---|---|
| MARY HARRIS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered September 23, 2015<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. JV-2014-502]<br><br>HONORABLE ANNIE HENDRICKS, JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Mary Harris was the custodian of her granddaughter, L.M. The Sebastian County Circuit Court adjudicated L.M. dependent-neglected based on Harris's inability to adequately supervise the child.[1] Harris appeals, arguing that the evidence before the court was insufficient to support the adjudication. We disagree and affirm.

Adjudication hearings are held to determine whether the allegations in a dependency-neglect petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2013). The Arkansas Department of Human Services (DHS) has the burden of proving that the children are dependent-neglected by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(1) & (2)(B) (Supp. 2013). The focus of an adjudication hearing is on the child,

---

[1] S.L. and A.B., siblings of L.M., were also adjudicated dependent-neglected; however, Harris did not have custody of those children, and their adjudication is not an issue in this appeal.

SLIP OPINION

not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Billingsley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 348; *Worrell v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 671, at 10, 378 S.W.3d 258, 263.

A "dependent-neglected juvenile" includes any juvenile who is at substantial risk of serious harm as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness. Ark. Code Ann. § 9-2-303(18)(A) (Supp. 2013). Neglect means an act or omission of a parent or custodian that constitutes a failure to take reasonable action to protect a juvenile from abandonment, abuse, neglect, or parental unfitness when the existence of this condition was known or should have been known. Ark. Code Ann. § 9-27-303(36)(A)(iii) (Supp. 2013). The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627. The term "substantial risk" speaks in terms of future harm. *Id.* Under our standard of review, we review a trial court's findings of fact de novo, but we will not reverse those findings unless they are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Billingsley*, *supra*; *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 364, 43 S.W.3d 196, 199 (2001). With these standards in mind, we turn to the facts considered by the circuit court in deciding whether L.M. was dependent-neglected.

Harris is the mother of Sylnonia Lawrence. Lawrence, in turn, is the mother of three children: L.M., born on June 17, 2007; A.B., born on June 25, 2009; and S.L., born on

August 14, 2014. When S.L. was born with methamphetamine and THC in his system, DHS filed a petition for emergency custody of S.L., which the circuit court granted.[2]

Approximately a week and a half after taking emergency custody of S.L., DHS filed a petition for emergency custody and dependency-neglect with respect to all three of Lawrence's children, including L.M. DHS asserted that the children were dependent-neglected due to abandonment, abuse, neglect, or parental unfitness. Because Harris had been granted legal custody of L.M. in 2008, she was also named as a defendant on this petition. DHS alleged several grounds as to why L.M. was dependent-neglected: (1) a previous hold had been taken on a sibling, S.L., due to substance abuse by the mother and the presence of methamphetamine and THC in S.L.'s system at the time of his birth; (2) Lawrence, L.M.'s mother, had attempted suicide several times in the preceding month; and (3) Harris had left L.M. unsupervised with Lawrence, despite being aware of Lawrence's drug use and untreated mental disorders.

The court granted the ex parte order for emergency custody the same day it was filed, and the children were removed from Lawrence's and Harris's custody. The court subsequently entered a probable-cause order, finding that there was probable cause that the emergency conditions that necessitated removal of L.M. from Harris's custody continued. The court also scheduled an adjudication hearing.

---

[2] Although S.L. was born on August 14, DHS did not place its seventy-two-hour hold on him until August 25 because he was immediately placed in the NICU after his birth due to withdrawal symptoms.

At the adjudication hearing, the court heard testimony on the issue of whether Harris could offer adequate supervision for L.M. and was fit to do so. The court heard testimony that Lawrence was a long-term methamphetamine user, including during her pregnancy with S.L. In addition, the court heard that Lawrence, while pregnant with S.L., had attempted suicide in front of L.M. More importantly, the court heard that, despite Lawrence's history of drug usage and mental issues, Harris would sometimes leave L.M. and A.B. with Lawrence overnight; on one occasion, Harris left the children with Lawrence for four or five days while Harris went out of town with her boyfriend.

Harris testified in response to this evidence against her. She began by listing the medications she was taking: Depakote, Wellbutrin, Zyprexa, which had been prescribed for her bipolar disorder; Klonopin and Norco, which were for pain relief and muscle spasms following back surgeries she had undergone in 2008; Valium; and Zolpidem. Harris then acknowledged Lawrence's methamphetamine use and agreed that Lawrence was not in any condition to be a primary caretaker for any of her children. Harris also acknowledged Lawrence's mental-health issues, explaining how she had tried to convince Lawrence to take her medications for her bipolar disorder, but Lawrence refused to do so. Harris agreed that L.M. had been removed from her custody because she had left the child alone with Lawrence. In her defense, Harris asserted that no one from DHS had ever told her that Lawrence could not see her children unsupervised. Immediately after that statement, however, she said that she knew that Lawrence "couldn't be around the kids." At the

4

conclusion of the hearing, the court adjudicated L.M. dependent–neglected. Harris timely appealed.

On appeal, Harris raises three main points. First, she contends that "no emergency existed at the time DHS placed a 72-hour hold on L.M." Second, she complains that, at the adjudication hearing, the circuit court found reasonable efforts on DHS's part "without one iota of evidence, testimonial or tangible, offered by the agency that is burdened with providing the proof." Finally, she contends that the allegations in the affidavits supporting the petition were not addressed or proved at trial.

With respect to Harris's first contention—that no emergency existed at the time of removal[3]—an ex parte emergency order directing removal of a juvenile is not an appealable order under Arkansas Supreme Court Rule 6-9(a). That rule allows appeals from adjudication orders; disposition, review, no-reunification, and permanency-planning orders when a Rule 54(b) certificate has been issued; orders terminating parental rights; denials of the right to counsel; and denials of motions to intervene. Moreover, Harris provides no authority for the proposition that the facts and circumstances of the actual removal have any bearing on the circuit court's ultimate decision regarding a dependency–neglect adjudication. *See Ward v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 491, at 5 ("We do not consider arguments without convincing argument or citation to authority where it is not apparent without further research that the arguments are well-taken.").

---

[3] At the adjudication hearing, Harris testified that she received a phone call from the caseworker at 10:30 p.m. advising that DHS was coming to remove the children from Harris's home.

Harris's second contention is that there was no proof that DHS provided reasonable efforts to prevent removal of the children. Under Arkansas Code Annotated section 9-27-303(48)(B) (Supp. 2013), however, the circuit court may deem that reasonable efforts have been made when the court finds that the first contact by the department occurred during an emergency in which the child could not safely remain at home, even with reasonable services being provided. The court made such a finding here in its ex parte order, which, again, is not an appealable order.

The main thrust of Harris's appeal, however, is that there were not sufficient facts introduced at the adjudication hearing to prove the allegations contained in the dependency-neglect petition. She notes that DHS's dependency-neglect petition alleged that L.M. was dependent-neglected because she had been left unsupervised with Lawrence and that Harris therefore failed to provide adequate supervision for L.M. Harris contends that there was "no evidence provided to substantiate the allegations."

We disagree. The allegations were that Harris left L.M. unsupervised with Lawrence and that Harris knew of Lawrence's drug use and mental-health issues. These allegations were well substantiated, in part by Harris's own testimony that she knew of Lawrence's drug addiction and bipolar disorder. In addition, with respect to the allegation that Harris left L.M. unsupervised with Lawrence, both L.M.'s aunt and A.B.'s father testified that Harris had left the child with her mother. Thus, there was clearly evidence in the record from which the circuit court could find that the allegations in the petition were true.

Moreover, it is clear from the record before us that the circuit court was extremely concerned with Harris's fitness and ability to adequately supervise L.M. After hearing Harris testify, the court stated as follows:

> I know Ms. Harris has had this child for a long period of time . . . . But the court is extremely concerned with her demeanor, her inability to enunciate, the different narcotics that she takes, Depakote, Wellbutrin, Zyprexa, Klonopin, Valium, Norco, and Zolpidem, that she read into the record, which are for bipolar, for seizures, panic disorder, anxiety, muscle relaxer, pain, and insomnia, and just having watched her testify and listen to her attempts to enunciate, her demeanor in the courtroom while not testifying, the court is convinced that this child—I'm going to find this child to be adjudicated dependent-neglected based upon parental unfitness and substance abuse, although prescribed.

The circuit court had the opportunity to observe Harris's demeanor and difficulty in communicating during the hearing, and the court was clearly concerned with the amount of medications Harris was taking and how those medications impaired her ability to adequately supervise and care for L.M.

This court is not to act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we reverse only in those cases where a definite mistake has occurred. *Johnson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 244, at 5, 413 S.W.3d 549, 552; *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884. In this case, we are unable to conclude that a mistake occurred.

Affirmed.

GLADWIN, C.J., and HOOFMAN, J., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.