Cite as 2020 Ark. App. 433

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-222

| | |
|---|---|
| JASON SKALSKI | **Opinion Delivered** September 23, 2020 |
| APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63JV-19-344] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE GARY ARNOLD, JUDGE |
| APPELLEES | AFFIRMED IN PART; REVERSED IN PART |

## LARRY D. VAUGHT, Judge

Jason Skalski appeals the adjudication order entered by the Saline County Circuit Court finding that his daughter, CS, is dependent-neglected. For reversal, he argues that (1) the circuit court's finding of dependency-neglect based on sexual and physical abuse is clearly against the preponderance of the evidence, and (2) the circuit court erred in finding that he had subjected CS to aggravated circumstances because it was not pled in the petition for dependency-neglect in violation of his due-process rights. We affirm in part and reverse and dismiss in part.

On November 6, 2019, CS (born November 21, 2005) disclosed to a school official that her father, Skalski, had been sexually and physically abusing her. This resulted in an immediate investigation, and on November 12, the Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect, alleging that CS was at substantial risk of serious harm as a result of sexual abuse, neglect, and parental unfitness. CS was removed from

Skalski's custody, and DHS exercised a seventy-two-hour hold on her. An ex parte order for emergency custody was entered on November 13 allowing DHS to maintain a hold on CS. The court, on December 11, entered an order finding probable cause to continue CS in foster care pending a hearing on the emergency petition.

An adjudication hearing was held on January 6, 2020, at which Marissa Amundson, an investigator for the Crimes Against Children Division of the Arkansas State Police, testified that a report was called in to the state police on November 6 alleging that Skalski had engaged in sexual contact with CS and had struck her in the head or face. Amundson testified that Skalski was interviewed by a detective at the Saline County Sheriff's Office and that she observed the interview. Amundson stated that she interviewed CS,[1] during which CS disclosed allegations of sexual and physical abuse against Skalski. Amundson said that CS's statements were consistent and that she (Amundson) observed that CS feared her father. It was Amundson's opinion that CS would be at risk of harm if returned to Skalski, that Skalski is the sole caregiver for CS, and that there are no other people in the home full time. Amundson concluded in her investigation that CS's claims of sexual contact, sexual penetration, and oral sex were true findings. Amundson further stated that while she concluded CS's claim that she had been struck in the head or face was unsubstantiated because she did not have a physical injury, that did not mean that CS had not been struck in the head.

---

[1]Amundson also interviewed Skalski's other minor child (DS), who does not live full time in the Skalski home and spoke with some of Skalski's adult children on the phone. Investigator Amundson further said that a forensic interview of CS's friend was conducted because CS said that the friend had witnessed some of the physical abuse.

Brandi Cannon, a forensic interviewer, testified that she interviewed CS on November 6 as well. Cannon stated that CS made several disclosures regarding the abuse allegations, that CS's statements were very consistent throughout the interview, and that she was tearful during the interview. Cannon had no concerns that CS had been coached to make the allegations or that she had an ulterior motive for making the allegations.

CS, who was fourteen at the time, testified that she had been living with her father full time since she five years old and that she had not seen her mom since that time. CS said Skalski had been sexually abusing her for the past four years. She said that he forced her to perform oral sex on him and that her mouth touched his penis. She said that his hands touched her "boobs" and vagina more than once. She said that he has tried to insert his penis inside of her two or three times—the last time was on November 2 or 4, 2019. According to CS, Skalski told her that it would not hurt, that everything would be fine, that he was her dad, and that he was not raping her. She also said that Skalski would become physically abusive with her if she pushed him away. She said that he had hit her with his hands on her face and that she is afraid of him.

Tatanishia Caffey is the DHS family service worker assigned to CS's case. Caffey testified that DHS was recommending that CS remain in foster care with the goal of adoption because CS had stated that she did not want to visit Skalski, and he had said he did not want to participate in services. Caffey also requested that the court find that Skalski had subjected CS to aggravated circumstances.

At the conclusion of the hearing, the circuit court orally entered a finding of dependency-neglect based on extreme and repeated cruelty and sex abuse. The court also

found that Skalski had subjected CS to aggravated circumstances based on extreme and repeated cruelty and sexual abuse. In reaching these conclusions, the court found that CS was "absolutely credible." The circuit court's adjudication order memorializing these findings was entered on January 16, 2020. This appeal followed.

Dependency-neglect allegations must be proved by a preponderance of the evidence. *Ashcroft v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 244, at 7, 374 S.W.3d 743, 747 (citing Ark. Code Ann. § 9-27-325(h)(2)(A)(ii) (Supp. 2019)). We will not reverse the circuit court's findings from a dependency-neglect adjudication unless they are clearly erroneous. *Id.*, 374 S.W.3d at 747. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Id.*, 374 S.W.3d at 747. This deference to the circuit court is even greater in cases involving child custody, as a heavier burden is placed on the circuit court to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*, 374 S.W.3d at 747.

Adjudication hearings are held to determine whether the allegations in a dependency-neglect petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2019). The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Harris v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 508, at 1–2, 470 S.W.3d 316, 317. An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Araujo v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 181, at 4, 574 S.W.3d 683, 686.

A dependent-neglected juvenile includes a child who is at substantial risk of serious harm as a result of sexual abuse. *Ashcroft*, 2010 Ark. App. 244, at 6, 374 S.W.3d at 746 (citing Ark. Code Ann. § 9-27-303(18)(A)(iii) (Supp. 2019)). The term "sexual abuse" includes sexual contact by a caretaker with a person younger than eighteen years of age. *Id.* at 6–7, 374 S.W.3d at 746–47; Ark. Code Ann. § 9-27-303(52)(D)(i). Under the juvenile code, "sexual contact" means any act of sexual gratification involving touching, directly or through clothing, of the sex organs, buttocks, or anus of a juvenile, or the breast of a female juvenile. *Ashcroft*, 2010 Ark. App. 244, at 7, 374 S.W.3d at 747 (citing Ark. Code Ann. § 9-27-303(53)(A)(i)). Direct proof that an act was done for sexual gratification is not required if it can be inferred that the desire for sexual gratification was a plausible reason for the act. *Id.*, 374 S.W.3d at 747.

A dependent-neglected juvenile also includes a child who is at substantial risk of serious harm as a result of abuse. Ark. Code Ann. § 9-27-303(18)(A)(ii). One of the definitions of "abuse" is "any nonaccidental physical injury." Ark. Code Ann. § 9-27-303(3)(A)(v).

Turning to Skalski's first point on appeal, he challenges the circuit court's dependency-neglect finding based on sexual and physical abuse. He claims that the sexual-abuse finding "rested solely on the mere allegation of a fourteen-year-old girl—with nothing more." Skalski argues that there was no physical exam of CS, she gave conflicting accounts of what occurred, there was no corroborative witness testimony, and there was no evidence of possible motives explored by DHS. Skalski also argues, with respect to the physical-abuse finding, that there was no corroborating evidence and that Amundson concluded that the physical-abuse claim was unsubstantiated because there was no physical injury. He also argues that DHS did not

5

present the testimony of CS's friend who allegedly witnessed CS's physical abuse and who was interviewed as part of the investigation.

We affirm the circuit court's dependency-neglect finding. The circuit court observed CS's demeanor and found that she was "absolutely credible" when she stated that Skalski touched her breasts and vagina, forced her to perform oral sex on him, and attempted to insert his penis into her vagina. CS also testified that when she refused to engage in sexual acts with Skalski, he would push her down on her bed, poke her in the face, and hit her with his hands in her face. Given our deference to the circuit court in such matters, we are not willing to second-guess the court's determination that CS presented credible testimony. *Lynch v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 149, at 5 (holding that this court will not act as a super fact-finder or second guess credibility determinations of the circuit court).

Furthermore, the two investigators who interviewed CS found her account consistent and without ulterior motive. We also note that Skalski did not testify or present any witness testimony on his behalf. In light of the evidence presented, we are not persuaded that the circuit court's finding of sexual and physical abuse is clearly against the preponderance of the evidence. Accordingly, we hold that the circuit court did not clearly err in concluding that CS is dependent-neglected.

Skalski's next point on appeal concerns the circuit court's aggravated-circumstances finding. Some procedural background is necessary. While DHS caseworker Caffey was on the stand, she testified that DHS was seeking a finding that Skalski subjected CS to aggravated circumstances. Counsel for Skalski objected to the request contending that an aggravated-circumstances finding was not pled in the petition and that he was not put on notice that he

6

would have to defend against it. DHS and the attorney ad litem responded that an aggravated-circumstances finding did not have to be pled, that Skalski was not entitled to notice of it, and that the court can make a sua sponte finding of aggravated circumstances based on the evidence presented at the hearing. The circuit court agreed, overruled Skalski's objection, and found that Skalski subjected CS to aggravated circumstances based on extreme and repeated cruelty and sexual abuse. On appeal, Skalski argues that the circuit court erred in making this finding because DHS did not plead it in the petition for dependency-neglect, and he was not afforded a full opportunity to defend against the finding at the adjudication hearing.

This court has held that due process requires, at a minimum, notice reasonably calculated to afford a natural parent the opportunity to be heard prior to terminating his or her parental rights. *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, at 6, 429 S.W.3d 276, 279–80 (citing *Kight v. Ark. Dep't of Human Servs.*, 94 Ark. App. 400, 409, 231 S.W.3d 103, 109 (2006)). In *Jackson*, the circuit court based its termination decision on a ground that was not pled in DHS's petition to terminate parental rights. *Id.*, 429 S.W.3d at 280. We reversed, holding that Jackson was denied the opportunity to properly defend the allegations against him. *Id.* at 7, 429 S.W.3d at 280; *see also Dornan v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 355, at 16–17 (holding that three of the statutory grounds found by the circuit court could not sustain the termination of Dornan's parental rights because they were not alleged in the termination petition and she was not placed on notice that she must defend against them).

Although the order from which Skalski appeals is not a termination order, we hold that the same due-process protections apply at the adjudication stage of the dependency-neglect proceedings. The dependency-neglect statute expressly defines an adjudication hearing as "a

hearing to determine whether the allegations in a petition are substantiated by the proof." Ark. Code Ann. § 9-27-303(4). The "Adjudication hearing" section of the statute reiterates this definition by providing that "an adjudication hearing shall be held to determine whether the allegations in a petition are substantiated by the proof." Ark. Code Ann. § 9-27-327(a)(1)(A). Thus, the plain language of these statutes is clear that the entire purpose of an adjudication hearing is for DHS to prove the allegations pled in its dependency-neglect petition.

Here, the dependency-neglect petition alleged that CS "is dependent-neglected by section 9-27-303 of the Arkansas Code. Specifically, [CS] is at substantial risk of serious harm as a result of sexual abuse, neglect, and parental unfitness." This is the only allegation that Skalski was notified that he had to defend against. DHS did not allege in its petition that Skalski subjected CS to aggravated circumstances. Therefore, Skalski had no notice prior to the adjudication hearing that an aggravated-circumstances finding might be entered against him, and he was not placed on notice that he must defend against this finding.

Further, as we stated in *Potterton v. Arkansas Department of Human Services*, "the proceedings and orders pertaining to the termination of parental rights 'build on one another,' and the findings of previous hearings are elements of subsequent hearings." 2017 Ark. App. 454, at 3, 527 S.W.3d 769, 771 (citing *Neves da Rocha v. Ark. Dep't of Human Servs.*, 93 Ark. App. 386, 393, 219 S.W.3d 660, 664 (2005)). In particular, a finding of aggravated circumstances during the adjudication proceedings can have significant negative consequences for a parent because in later proceedings an aggravated-circumstances finding can constitute grounds supporting an order terminating reunification services. Ark. Code Ann. § 9-27-365(a)(2), (c)(2) (Repl. 2015). An aggravated-circumstances finding can also support an order terminating

8

parental rights. Ark. Code Ann. § 9-27-341(a)(3)(B)*(3)(A), (B)(i)–(iii)* (Supp. 2019). In light of the considerable implications of an aggravated-circumstances finding at the adjudication stage of the proceedings, we conclude that due process dictates that parents be afforded an opportunity to properly defend against such an allegation. Because DHS failed to plead aggravated circumstances in its petition, Skalski was not afforded this opportunity, and we hold that the circuit court clearly erred in making the finding against him.

DHS and the attorney ad litem urge us to affirm despite DHS's failure to plead aggravated circumstances. They contend that Skalski was effectively put on notice of the request for an aggravated-circumstances finding because it was based on allegations of sexual and physical abuse, which were alleged in the petition and in the affidavits attached to the petition. We disagree.

An aggravated-circumstances finding can be based on one of multiple circumstances. Ark. Code Ann. § 9-27-303(6)(A), (B), (C).[2] Because DHS's petition did not plead aggravated circumstances, it also did not include any allegations explaining on what basis DHS was seeking the finding. Such a finding *could* have been based on any number of circumstances other than sexual or physical abuse. In fact, the attorney ad litem argued at the adjudication hearing that aggravated circumstances could be found based on the little likelihood that

---

[2]Section 9-27-303(6)(A), (B), (C) provides that "aggravated circumstances" means that a child has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, sexually exploited, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification; a child has been removed from the custody of the parent or guardian and placed in foster care or in the custody of another person three or more times in the last fifteen months; or a child or a sibling has been neglected or abused such that the abuse or neglect could endanger the life of the child.

services will result in reunification, which was not alleged in the petition or included in the affidavits attached to the petition. Therefore, we hold that Skalski was not effectively placed on notice that he was required to defend against an allegation of aggravated circumstances by the mere fact that DHS alleged he had sexually and physically abused CS.

Finally, DHS and the attorney ad litem argue that Skalski waived his right to challenge the aggravated-circumstances finding on appeal. They point out that they moved to amend the pleadings to conform to the evidence under Arkansas Rule of Civil Procedure 15(b), Skalski did not object, the court granted the motion, and Skalski does not challenge this ruling on appeal.

We hold that Skalski did not waive his right to challenge the aggravated-circumstances finding because the motion to conform the pleadings to the evidence was made and granted within a context unrelated to the aggravated-circumstances issue. At the conclusion of the adjudication hearing, DHS counsel advised the court that she had just learned that Skalski and CS's mother were never married. Counsel then moved to amend the pleadings to conform to the evidence presented "in regard to the significant contacts and the relationship that Mr. Skalski has had with the child since she was young." The Rule 15(b) motion was entirely unrelated to the aggravated-circumstances matter. Therefore, we hold that the motion to conform the pleadings to the evidence was limited in context and that it did not amend the petition to plead a request for a finding of aggravated circumstances. We make no comment as to whether a properly raised Rule 15(b) motion would amend the pleadings sufficient to correct the due-process violation discussed herein.

Affirmed in part; reversed in part.

GRUBER, C.J., and MURPHY, J., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.