2012 Ark. App. 244

**Jessica JOHNSON and Andrew Evans, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 11–1253.**

Court of Appeals of Arkansas.

April 11, 2012.

R. Kevin Barham, Barham Law Office, P.A., Paris, for Appellants.

Melissa B. Richardson, Bristow & Richardson, Jonesboro, Tabitha McNulty, Little Rock, for Appellees.

ROBERT J. GLADWIN, Judge.

Appellants Jessica Johnson and Andrew Evans appeal the September 21, 2011 adjudication of their minor children as dependent-neglected in Logan County Circuit Court. Ms. Johnson is the mother of the three children, R.U. (DOB 12/12/06), M.U. (DOB 06/17/08), and J.E. (DOB 12/16/10), and Mr. Evans is the father of J.E. Both of these parents argue in their separate appellate briefs that the evidence was insufficient to prove that the children were dependent-neglected, and in addition, Mr. Evans argues that the trial court erred by failing to dismiss the case because the State did not allege facts in its petition and did not attach an affidavit of facts, both of which are required by Arkansas Code Annotated section 9–27–311 (Supp.2011). We reverse on appellants' sufficiency arguments.

DHS took all three children into custody on a seventy-two-hour hold on July 25, 2011, after receiving a child-abuse-hotline report. The affidavit that was attached to the petition for emergency custody, however, contained only the first and last pages of a four-page affidavit compiled by the DHS investigator and reflected only the hotline report but not the investigator's findings. The reporter alleged that Ms. Johnson was in jail after a positive drug-test result from drug court and that Mr. Evans was giving melatonin to R.U. and M.U. before bedtime. The reporter also claimed that M.U. had a bruise on his head from Mr. Evans "punching" him and that R.U. told people that Mr. Evans hit them in the head. Based on the information in the affidavit, the trial court granted emergency custody to DHS in an order entered July 29, 2011.

At the probable-cause hearing, the trial court found that an emergency condition continued to exist and placed the youngest child in the custody of Ron and Marcia Ford, Mr. Evans's mother and stepfather, and the two older children with DHS. At this hearing, the court ordered Ms. Johnson and Mr. Evans to cooperate with DHS and complete parenting classes.

The adjudication hearing that is the subject of this appeal was held September 21, 2011. The DHS investigator testified that the affidavit that had been presented to the trial court was inaccurate because it did not contain his full report. He testified that he interviewed the parents, Ms. Ford, the teacher at the children's daycare center, talked to and checked R.U. and M.U., and concluded that the bruise behind M.U.'s ear was accidental, resulting either from a fall at daycare or from getting hit with a door while playing. Ms. Johnson was in jail when M.U. was bruised, and Mr. Evans testified that he noticed the bruise and asked a daycare worker about it. He further testified that the child had fallen out of bed, had fallen backwards out of a chair at daycare, and had been hit by a door while running

through Mr. Evans's sister's house. R.U. also told the DHS investigator that M.U. had been hit by a door. The DHS investigator said that he had not recommended that the children be removed from their parents, but he was "overruled" by his supervisor.

Additional evidence adduced at the hearing revealed that in April 2010, R.U. was sexually abused by her biological father, who no longer had visitation rights as a result, and that she was having emotional problems that brought on bed-wetting, temper tantrums, and an inability to sleep. Although Ms. Johnson sought therapy for R.U. after she learned of the abuse in December 2010, the counseling seemed to exacerbate R.U.'s problems, and the therapist suggested that it cease. Because of these problems, Ms. Ford recommended that Ms. Johnson try giving melatonin to R.U. in a 300–microgram dose to aid her sleeping. Ms. Ford, J.E.'s paternal grandmother, is a retired school principal and testified that she had witnessed R.U.'s behaviors following the sexual abuse. Ms. Johnson took Ms. Ford's advice, after researching the safety and uses of melatonin and talking with other references, but she did not talk to the children's doctors. On one occasion Ms. Johnson tried to give a half dose to M.U. because of his hyperactivity and sleep problems, but he would not take it from her. Mr. Evans said he had given half of R.U.'s dosage to M.U. on two occasions. No evidence was presented at the hearing about what melatonin is, other than being an over-the-counter supplement that is available for purchase at Wal Mart. There was no evidence presented by DHS of any danger in giving it to children, and there was no evidence that the children had any adverse reaction to it or demonstrated any negative effects from it.

There was testimony that Ms. Johnson and Mr. Evans had used corporal punishment on the children, either with a "bullet belt" (which was a camouflage belt with indentions for holding bullets), which Mr. Evans used twice, or a wooden spoon, which Ms. Johnson used once or twice. There was no evidence that the children were injured or bruised by this punishment or that they were spanked on any part of their body other than their bottoms, and the investigator found no bruises on the children. Finally, Ms. Johnson told the trial court that on one occasion, Mr. Evans "popped" R.U. on the top of the head with the palm of his hand when the child was acting out, but that Ms. Johnson immediately told him never to do that. Mr. Evans said that R.U. did not have a mark from this and did not cry when it happened.

At the time of the adjudication hearing, Mr. Evans, at the behest of DHS, no longer lived with Ms. Johnson. Ms. Johnson remained in the drug-court program, was about to move into the aftercare portion of the program, and had no pending charges. She had begun parenting classes as ordered by the court, she had a job, and she was going to college. Mr. Evans testified that he had never been in trouble with the law, had never been convicted of a felony, and that he had missed a parenting class because he had a test in a welding class he was taking at Arkansas Tech University in Ozark.

After hearing the evidence, the trial court declared the children dependent-neglected, finding that it was "unconscionable" that Ms. Johnson and Mr. Evans used corporal punishment and gave melatonin to R.U. The trial court denied Ms. Johnson's request that the children be returned to her, instead placing all three children in the temporary custody of the Fords. Ms. Johnson timely filed a notice of appeal on October 4, 2011, and Mr. Evans timely

filed a notice of appeal on October 11, 2011. This appeal follows.

■■■ Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9–27–327(a)(1) (Supp.2011). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark.Code Ann. § 9–27–325(h)(2)(B) (Supp.2011). We will not reverse the circuit court's findings unless they are clearly erroneous. *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Id.* And in an adjudication hearing, the focus is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Id.* An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark.App. 277, 283, 248 S.W.3d 498, 502 (2007). The appellate court is not to act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we reverse only in those cases where a definite mistake has occurred. *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884.

A dependent-neglected juvenile is one at substantial risk of serious harm as the result of, among other things, abuse or neglect. *See* Ark.Code Ann. § 9–27–303(18)(A)(ii) and (v) (Supp.2011). Arkansas Code Annotated section 9–27–303(3)(A) (Supp.2011) defines "abuse," by a parent or guardian in pertinent part, as follows:

(iv) Any injury that is at variance with the history given;

(v) Any nonaccidental physical injury;

. . . .

(vii) Any of the following intentional or knowing acts, with or without physical injury:

(*a*) Striking a child six (6) years of age or younger on the face or head;

. . . .

(*h*) Giving a child or permitting a child to consume or inhale a substance not prescribed by a physician that has the capacity to alter the mood of the child, including, but not limited to, the following: ... (*4*) Over-the-counter drugs if a person purposely administers an overdose to a child or purposely gives an inappropriate over-the-counter drug to a child and the child is detrimentally impacted by the overdose or over-the-counter drug.

Ark.Code Ann. § 9–27–303(3)(A)(iv), (v), (vii)(*a*), and (vii)(*h*)(*4*).

"Neglect" is a parent or guardian's failure to prevent abuse or protect the child from being abused. *See* Ark.Code Ann. § 9–27–303(36)(A)(i), (iii).

Arkansas Code Annotated section 9–27–311(d) provides:

(1) The petition shall set forth the following in plain and concise words:

(A) The facts, that, if proven, would bring the family or juvenile within the court's jurisdiction ...

(2)(A) The petition shall be supported by an affidavit of facts.

Ark.Code Ann. § 9–27–311(d)(1)(A), and (d)(2)(A).

In this appeal, Ms. Johnson and Mr. Evans assert that there was insufficient evidence to support the adjudication of their children as dependent-neglected or to require that the children remain in the

custody of the Fords. The trial court relied on three bases in its adjudication order—"hitting w/belt, hitting w/spoon, melatonin misuse."

DHS and the ad litem contend that, based on a totality of the circumstances, the evidence was sufficient to demonstrate that the children were dependent-neglected. They stress that Ms. Johnson had recently been released from a thirty-day jail stay due to a failed drug test when her children were taken by DHS on a seventy-two-hour hold. They argue that this places the juveniles at substantial risk of harm due to Ms. Johnson's drug use, citing *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627, because she could be exposed to criminal liability or may be impaired while caring for the children.

DHS and the ad litem claim that the bruise on M.U. was "at variance with the history given." *See* Ark.Code Ann. § 9–27–303(3)(A)(iv). They emphasize the use of the "bullet belt," arguing that R.U. had admitted being sexually abused by her biological father, but waited eight months before disclosing the abuse for fear that Ms. Johnson would spank her. Further, they contend that Mr. Evans spanked R.U. with the "bullet belt" when she was acting out due to the sexual abuse that she suffered. DHS and the ad litem argue that "popping" the child on the head constitutes abuse, given that R.U. is under six years of age. *See* Ark.Code Ann. § 9–27–303(3)(A)(vii)(a). DHS and the ad litem also contend that based on the evidence of R.U. and M.U. receiving spankings from the "bullet belt" and R.U. being "popped" on the head, it was reasonable to believe M.U. was bruised by some act of Evans.

Finally, DHS and the ad litem argue that both appellants were administering melatonin to preschool children without the advice of a physician. The trial court took judicial notice that it was inappropriate to provide an adult dosage of a nonprescription drug to a child. Therefore, they contend that the trial court did not err in considering this inappropriate and part of the overall totality of circumstances.

As argued by both parents, the record is devoid of any information identifying melatonin, its uses, or possible harmful effects. The testimony was that Marcia Ford, Mr. Evans's mother, suggested its use. Ms. Ford is a retired school principal with a master's degree in special education and has experience with children with emotional and behavioral problems. Melatonin is available at Wal Mart, is sold over the counter, and was administered in a 300–microgram dose, which was described as one third of an adult dose. Both appellants argue that, under Arkansas Code Annotated section 9–27–303(3)(A)(vii)(*h*)(*4*), none of the children were given an overdose of melatonin and there was no evidence of a detrimental impact on the children.

We agree. The trial court took judicial notice that it was inappropriate to provide an adult dose of a nonprescription drug to a child. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Ark. R. Evid. 201(b) (2011). Because the record is devoid of any evidence related to melatonin, i.e., its uses, dosage, side effects, etc., we hold that the trial court had no basis in fact for finding melatonin use to be harmful to children. Therefore, we hold that it was a definite mistake to find that the administering of melatonin in this situation was a basis for determining that the children were dependent-neglected.

Both parties cite *Brown v. Brown*, 76 Ark.App. 494, 68 S.W.3d 316 (2002), for the proposition that corporal punishment is acceptable as long as it is moderate, reasonable, and does not result in other than transient pain. Appellants both contend that the trial court's outrage, calling the spankings "unconscionable," was unwarranted. The evidence regarding the "bullet belt" and the wooden spoon being used to spank the children did not reveal how the spankings were administered, whether the children were spanked over their clothes, why they were spanked, how many licks were administered, nor was there any evidence that the children were injured or that the punishment was unreasonable or immoderate. The DHS investigator found no markings on the children when he inspected them. The parents argue that nothing pointed to a substantial risk of serious injury from these spankings. We agree, holding that an adjudication of dependency-neglect on this basis was a mistake, as DHS failed to provide sufficient proof that the spankings were anything other than moderate or reasonable, and did not result in other than transient pain. *See Brown, supra.*

When the trial court made its ruling from the bench, the judge noted that there were inconsistencies in the testimony regarding how M.U. received the bruise behind his ear. Mr. Evans points to the DHS investigator's conclusion that neither of the parents was involved in the child's bruising. Ms. Johnson testified that there were two incidents when M.U. could have received a bruise on his head, and the DHS investigator concluded that M.U. received two injuries to his head, both of which occurred as a result of accidents that did not involve either parent. Mr. Evans testified to at least two incidents, including the child being hit by a door, and R.U. also testified that M.U. was hit by a door. To support a dependency-neglect finding, the injury must be nonaccidental to be considered abuse. Ark.Code Ann. § 9–27–303(3)(A)(v).

Ms. Johnson contends that the incident when Mr. Evans "popped" R.U. on the head was overblown. She acknowledges that "abuse" is defined by striking a young child in the face or head. *See* Ark. Code Ann. § 9–27–303(A)(vii)(a). She contends that this pop on the child's head did not amount to a substantial risk of serious injury justifying a finding of dependency-neglect. No evidence of injury was found to these children, and the allegation of "popping" R.U. on the head was not included in DHS's case-in-chief. We agree with Mr. Evans that one incident that did not result in injury should not give rise to the removal of the children from the home.

Therefore, we hold that DHS failed to provide proof that these incidents or "totality of circumstances" amounted to dependency neglect. Accordingly, we reverse the adjudication of dependency neglect and dismiss. Because we reverse on sufficiency grounds, we do not address Mr. Evans's second point on appeal.

Reversed and dismissed.

GLOVER and BROWN, JJ., agree.