RHONDA K. WOOD, Judge. |,The circuit court adjudicated Lashonda Goodwin’s child dependent-neglected. Goodwin appeals from the court’s adjudication order. Because the court’s findings are not clearly against the preponderance of the evidence, we affirm the adjudication order. Goodwin, 23-years old, gave birth to M.G. in November 2013. The Department of Human Services (DHS) exercised a hold ón M.G. after Goodwin reported to hospital staff that she had lost custody of her other children, had a history of depression, had not taken her medication, and had unstable living arrangements. At the adjudication hearing, Goodwin testified to the following facts: (1) she had four other children besides M.G. but did not have custody of any of them; (2) the State of Ohio had terminated her rights to at least one of the children, Ma.G., after he was born weighing one pound, seven ounces; (3) another child, X.G., was taken by the State of Arkansas, then returned, only for Ohio to |2“come and get [sic] him”; (4) the longest she had custody of any of her children was seven months; (5) she had a six-year-old daughter living with an “Auntie,” but she had not had contact with her in over a year because “Auntie” changed the phone number; (6) two weeks before the hearing, she had moved in with her stepbrother and his wife in a two-bedroom apartment; and (7) she was not employed, and food stamps were her only source of income. DHS’s family-service worker testified that she had not visited Goodwin’s new apartment because Goodwin had just moved in right before the hearing. The worker also testified that no home study had been conducted on the father, Michael Lewis, because he had just been released from jail and was awaiting a court date on a revocation charge;[1] thus, he could not pass a home study. In her defense, Goodwin testified that she would be able to keep and care for M.G., unlike her other children, because she had a support network in Arkansas consisting of her stepbrother, her stepbrother’s wife, and M.G.’s father. The court adjudicated M.G. dependent-neglected based on Goodwin’s admission that she had lost custody of her other children, her diagnosis for depression, and her unstable housing and income. In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the court’s findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Moiser v. Ark. Dep’t of Human Servs., 95 Ark.App. 32, 233 S.W.3d 172 (2006). A finding is clearly erroneous when, although there is evidence to | ^support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Eason v. Ark. Dep’t of Human Servs., 2012 Ark. App. 507, 423 S.W.3d 138. At a dependency-neglect adjudication hearing, DHS has to prove the allegations in the petition by the preponderance of the evidence. Ark.Code Ann. §§ 9-27-325(h)(2)(B); 9-27-327(a)(l) (Supp. 2013). A dependent-neglected juvenile is one “who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile: (i) abandonment; (ii) abuse; (iii) sexual abuse; (iv) sexual exploitation; (v) neglect; (vi) parental unfitness; or (vii) being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian.” Ark.Code Ann. § 9-27-303(18)(A). Neglect is defined in the Juvenile Code and can mean, among other things, an act or omission by the parent that constitutes a “failure to take reasonable action to protect the juvenile from ... parental unfitness when the existence of this condition was known or should have been known.” Ark.Code Ann. § 9-27-303(36)(A)(iii). “The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term ‘substantial risk’ speaks in terms of future harm.” Maynard v. Ark. Dep’t of Human Servs., 2011 Ark. App. 82, at 7, 389 S.W.3d 627, 630. At an adjudication hearing, the focus is on the child, not the parent. Seago v. Ark. Dep’t of Human Servs., 2009 Ark. App. 767, 360 S.W.3d 733. Here, the court adjudicated M.G. dependent-neglected because Goodwin’s rights to another child had been terminated and because of Goodwin’s unstable housing and hincóme.[2] Goodwin argues that these findings are clearly against the preponderance of the evidence. First, Goodwin argues that DHS offered no evidence that her other children, M.G.’s siblings, were ever subjected to a substantial risk of serious harm. Second, she argues that she had stable housing because she was living with her stepbrother; she also points out that she was receiving assistance in the form of food stamps Goodwin’s arguments lack merit. For one thing, Goodwin admitted at the adjudication hearing that her parental rights to at least one of her children had been terminated by the State of Ohio. Her attorney argued at the hearing, and also argues on appeal, that DHS should have proved this fact with written documentation and, citing Arkansas Rule of Evidence 901 (2013), maintains that Goodwin’s testimony is not the best evidence of her history in other child-welfare cases. This argument is misplaced for two reasons. First, Rule 901 concerns authentication and identification of evidence; it has nothing to do with the best-evidence rule, which resides in Rule 1002. Second, the best-evidence rule applies only when a party tries to prove the content of a writing.[3] But here, DHS was trying to establish the existence of a past fact — that is, that Goodwin’s rights to another child had been terminated. Of course, a document or writing from an Ohio court could have demonstrated this fact. But there is no rule that prohibits Goodwin’s own | ^testimony from demon-strafing this fact too.[4] Indeed, Goodwin can testify to any fact within her personal knowledge. Ark. R. Evid. 602. And the question whether her rights to any of her children had been terminated surely resides within her personal experience. Summing up this point: Goodwin’s admission that her rights to one of her children had been terminated, that other states had taken another child into custody, and that she did not have custody of any of her children is sufficient to show by a preponderance of the evidence that M.G. is at substantial risk of serious harm because of neglect or parental unfitness. In addition to Goodwin’s admitted history of parental unfitness, the court found by a preponderance of the evidence that Goodwin had unstable housing. Supporting this was Goodwin’s testimony about living in Arkansas, then Ohio, and now living back in Arkansas. Goodwin also testified that she had moved again two weeks before the hearing. Her current living arrangement, where she is staying with her stepbrother, supports the court’s finding that Goodwin tends to be incapable of living on her own and supporting herself. The court also had a sufficient basis to find that her income was unstable based on her testimony that she did not have a job and that her sole source of income was food stamps. |6All in all, the circuit court was faced with a mother who does not have custody of her other four children. At least one loss of custody resulted from termination. In order to prevent the next child, M.G., from suffering serious harm, the court made the decision to adjudicate the child dependent-neglected. As stated previously, the focus is on the child and the potential harm to that child. Seago, supra. This is not to say that once a parent’s rights to a child have been terminated, the rest of her children are automatically dependent-neglected. Rather, based on these particular facts, the court’s dependency-neglect ruling is not clearly against the preponderance of the evidence after considering Goodwin’s history of parental unfitness, unstable housing, and her current inability to support herself. A dependency-neglect case will give Goodwin an opportunity, under supervision, to demonstrate whether she has changed and can potentially raise M.G. in the future.[5] Based on this record, we hold that the court’s dependency-neglect finding is not clearly against the preponderance of the evidence and affirm the adjudication order. Affirmed. GLADWIN, C.J., and HARRISON, WYNNE, and GLOVER, JJ„ agree. BROWN, J., dissents. . This was for violating probation on a residential-burglary charge. . The court was also concerned with Goodwin's diagnosis for depression. But there was no evidence that this diagnosis inhibited her parental abilities or could otherwise cause future harm to M.G. . "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as . otherwise provide by these rules or by [rules adopted by the Supreme Court of this state or by] statute.” Ark. R. Evid. 1002. .See, e.g., Lin Mfg. Co. of Ark. v. Courson, 246 Ark. 5, 8, 436 S.W.2d 472, 474 (1969) ("There is a distinction between proving a fact which has been put in writing and proving the writing itself. Because a fact has been described in writing does not exclude other proof of the fact.”). . We are hopeful that during the pendency of this case, DHS will display better preparedness than it displayed at this hearing. It would have been helpful to the trial court and our court on appeal had DHS sought and obtained the records concerning the mother’s past interactions with the states of Arkansas, Ohio, and Michigan regarding her other children.