

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-171

| | |
|---|---|
| JENNIFER BEAN and JON C. BEAN | **Opinion Delivered:** June 22, 2016 |
| APPELLANTS | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO.04J-15-500] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | HONORABLE THOMAS E. SMITH, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellants appeal from the circuit court's order adjudicating appellants' child, C.B.4, born 5/19/2015, as dependent-neglected. Appellants' sole argument on appeal is that there was insufficient evidence to support the circuit court's finding that C.B.4 was dependent-neglected. We affirm.

DHS encountered appellants on December 20, 2013, after receiving a referral with allegations of environmental neglect involving their three children C.B.1, born 5/7/2010; C.B.2, born 6/25/2011; and C.B.3, born 1/27/2014. Finding appellants' home filled with dirt, debris, and filth in every room, the report was found to be true. A protective services case was opened on the three children, during which it was learned that appellants had given six other children to the maternal grandparents due to environmental neglect and had not seen those six children in "about 2 years."

DHS continued to contact appellants regarding the environmental neglect, which did not get better, and continued when appellants moved to another home. Appellants denied that they needed help with organization or cleaning or that parenting classes were needed. Appellants declined intensive family services. Appellants told the family service worker not to come to their home and moved without notifying DHS, though the worker was given directions to the new home. Upon arrival at the new home on July 19, 2014, Jennifer refused to let the worker in the home. The worker was put on the phone with Chris who told her not to come to the house when he was not there, on weekends, or late at night.[1] Of appellants' three children, one was completely naked until Jennifer told him to put clothes on and another was wearing a diaper that was full of urine to the point of "hanging down almost to his knees." Chris advised that the appellants were suing DHS for harassment. A 72-hour hold was taken on appellants' three children on July 19, 2014. They were still in DHS's custody, in foster care, when C.B.4 was born on May 19, 2015.

After being referred for services with Seven Hills Homeless Center (Seven Hills), appellants lied about having custody of their three children in the home in order to get a three-bedroom house, and Chris stopped working once the program began paying appellants' bills.[2] Appellants' visits with the children were not going well as Jennifer "[lost] her temper often in front of the children" and did not support C.B.4's head when he was just ten days old. DHS filed a petition for a finding of dependency–neglect on C.B.4 on

---

[1] Appellant Jon C. Bean is referred to as "Chris" below, and so, is referred to in the same manner in this opinion.

[2] Chris did not make enough money to pay his bills.

August 19, 2015, therein noting DHS's history with appellants, that their children "were not speaking and did not even know their names" when taken into custody, and its belief that appellants "[had] not demonstrated to have the ability to care for children nor to provide for their basic needs."

A three-day hearing was held on DHS's petition.[3] At the hearing, appellants stipulated that C.B.1, C.B.2, and C.B.3 had already been adjudicated dependent–neglected. Extensive testimony was taken over three days. The circuit court orally ruled as follows:

> I'm going to find, based on the law, and the arguments, and the evidence, based on these factors: One, there is a very, very long history, it's not just these three kids currently in care, it's the fact that six other kids have been in care and a guardianship voluntarily; but for the same reasons, for environmental neglect.
>
> . . . .
>
> And then in this case, [C.B.4], the concern to this Court is [appellants] have made a lot of progress. But specifically, the Court's biggest concern has always been the ability of the Beans to accept help, and to be honest. And they actually weren't honest about being pregnant with [C.B.4]. They didn't tell DHS. That's a concern to the court.
>
> . . . .
>
> So I'm going to adjudicate dependent-neglect. I'm not going to take this child. I want all of these kids immediately prepared to start trial placement by the time we have a hearing.
>
> . . . .
>
> But keep in mind, while I am adjudicating dependent-neglect, I am finding that you all have taken the services we've been offering. Listening to you testify today, I observed and listened. [ . . . ] You recognized accountability.
>
> . . . .
>
> I do believe that there is a risk though, that when I put all of these kids back in your care that you may not be up to the task.
>
> But you need to remember, the concerns the State has are legitimate. We've had 10 kids, six of them live with one set of grandparents. Three of them are in the State's care. One of them had failure to thrive while we had the case going. No matter what the circumstances are—when you connect the dots, that's very scary.

---

[3] The hearing took place on September 15, 2015; September 22, 2015; and October 8, 2015.

The circuit court went on to state, "I know [the appellants are] raising [C.B.4] fine. I'm actually convinced [C.B.4] is not in danger right now. However based on all of this history he could be in danger when all these other kids are around." The circuit court entered an order on November 23, 2015, adjudicating C.B.4 dependent-neglected on account of neglect and parental unfitness. This timely appeal followed.

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof.[4] Dependency-neglect allegations must be proven by a preponderance of the evidence.[5] We will not reverse the circuit court's findings unless they are clearly erroneous.[6] In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses.[7] The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected.[8] An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading

---

[4] *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, at 5, 389 S.W.3d 627, 629 (citing Ark. Code Ann. § 9-27-327(a)(1) (Repl. 2009)).

[5] *Id.* (citing Ark. Code Ann. § 9-27-325(h)(2)(B).

[6] *Id.* (citing *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733).

[7] *Id.*

[8] *Id.*

to the adjudication; the juvenile is simply dependent-neglected.[9] The appellate court is not to act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we reverse only in those cases where a definite mistake has occurred.[10]

DHS must prove by a preponderance of the evidence that C.B.4 was dependent-neglected.[11] A dependent-neglected juvenile includes one who is at substantial risk of serious harm because of abuse, neglect, or parental unfitness to the juvenile or to a sibling.[12] "Neglect" means those acts or omissions of a parent that constitute, among other things, a failure to appropriately supervise the juvenile that results in the juvenile's being left alone in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm.[13] The statutory definition of a neglected child does not require proof of actual harm or impairment.[14] The term "substantial risk" speaks in terms of future

---

[9] *Johnson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 244, at 5, 413 S.W.3d 549, 552 (citing *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 283, 248 S.W.3d 498, 502 (2007)).

[10] *Id.* (citing *K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884).

[11] *Hernandez v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 424, at 3 (citing Ark. Code Ann. § 9–27–325(h)(1) & (2)(B) (Supp. 2011)).

[12] *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, at 4, 446 S.W.3d 210, 213 (citing Ark. Code Ann. § 9–27–303(18)(A) (Supp. 2013)).

[13] *Samuels v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 2, at 7, 479 S.W.3d 596, 600 (citing Ark. Code Ann. § 9–27–303(36)(A)(vii)(b)).

[14] *Id.* (citing *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627).

harm.[15] Parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question.[16] Such a construction of the law would fly in the face of the General Assembly's expressed purpose of protecting dependent-neglected children and making those children's health and safety the juvenile code's paramount concern.[17]

Appellants argue on appeal that there was insufficient evidence to support the circuit court's finding that C.B.4 was dependent-neglected. They specifically argue that the insufficiency arises from the fact that C.B.4 was not at substantial risk of harm at the time of adjudication and the fact that the potential for harm, according to the circuit court, came from the contingency of appellants receiving custody of their three other children who were in foster care at the time. DHS argues that the circuit court was "well within the scope of the "'sibling adjudication' element of the Juvenile Code" in adjudicating C.B.4 dependent-neglected. We agree with DHS.

In December 2013—sixteen months before DHS's August 2015 petition—DHS had investigated and substantiated reports of severe environmental neglect in the Beans' household. DHS attempted, unsuccessfully, to resolve these environmental neglect issues for nearly seven months. C.B.4's three older siblings were removed from appellants and placed into foster care on July 19, 2014. C.B.4 was born on May 19, 2015, ten months after the removal of the three older siblings. The older siblings were still in foster care at the time

---

[15] *Id.* (citing *Harris v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 508, 470 S.W.3d 31).

[16] *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196, 199 (2001).

[17] *Id.*

DHS filed the petition for dependency-neglect regarding C.B.4 on August 19, 2015. The caseworker's affidavit, which was attached to the dependency-neglect petition regarding C.B.4, alleged that Jennifer "lied to the Department for several months by telling worker she was not pregnant." The affidavit also recounted that DHS's difficulties with appellants had persisted, noting for example, that appellants had received housing support under false pretenses by failing to disclose to the support agency that their three children had been removed from the home, and that Chris had stopped working shortly after the social services agency began paying their bills. The caseworker also stated that visits were not going well and that Jennifer was not holding the infant C.B.4's head correctly. Also recounted in the affidavit was the long history between DHS and appellants that involved multiple children and environmental neglect, inadequate supervision, and medical neglect going back to 2003.[18]

An adjudication of dependency-neglect based on a prior adjudication of a sibling should never be an automatic decision. Given the facts and evidence before it, we agree with DHS that the circuit court had more than a preponderance of the evidence of a substantial risk of serious harm to C.B.4. It is clear that its decision was not automatic. Furthermore, while the court's finding was based in part on the contingency of the return

---

[18] Six other children had been removed from appellants' care and were currently in the care of their maternal grandparents. Appellants had not seen these six children in about two years.

of C.B.4's three older siblings to appellants' care, such a consideration does not constitute error because substantial risk speaks in terms of future harm.[19]

We find that the circuit court did not clearly err in adjudicating C.B.4 dependent-neglected.

Affirmed.

GLADWIN, C.J., and HOOFMAN, J., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellants.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[19] *See Goodwin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 599, at 3, 445 S.W.3d 547, 549.