MIKE MURPHY, Judge
Appellant Brittani Young appeals from the July 21, 2017 order of the Pulaski County Circuit Court adjudicating her children dependent-neglected, as well as from the order denying her motion for reconsideration. She argues that the circuit court erred in adjudicating her children dependent-neglected because appellee Arkansas Department of Human Services (DHS) failed to present sufficient evidence that she was unfit or that she abused her children. We affirm in part and reverse in part.
On May 28, 2017, DHS exercised an emergency seventy-two-hour hold on Young's three children, M.P. (DOB 8/16/2009), A.P. (DOB 9/4/2011), and K.B.1 (DOB 8/21/2014), based on the fact that Young's youngest child, K.B.2, passed away after having been in the care of Kwuan Bryant, Young's live-in boyfriend. On May 31, 2017, the circuit court entered an ex parte order of emergency custody. A probable-cause order was entered June 6, 2017, which stipulated that probable cause existed at the time the hold was exercised and continued to exist such that it was necessary that the children continue in the custody of DHS due to the family's history and allegations of physical abuse by an "unknown offender" as it related to K.B.2's death.
An adjudication hearing was conducted on July 5, 2017. Dr. Thomas James Abramo was the first to testify. He explained that he was the emergency-room physician who cared for K.B.2. Dr. Abramo said that K.B.2 was immediately taken to the resuscitation room when she arrived at the hospital because he observed she was without a pulse and was not breathing. He also observed that she had cloudy eyes, a low core temperature, and some bruising in her lower abdomen. He informed the circuit court that there was never an explanation provided as to what had actually happened to K.B.2. Dr. Abramo stated that he was informed that Young had been work and she came home to find K.B.2 not breathing. He also confirmed that there *385 had been no formal cause-of-death determination because the autopsy report had not been completed at the time of the hearing.
Kwuan Bryant, K.B.1 and K.B.2's father, testified next. He was not appointed an attorney at the time.[1] Bryant was informed of his Fifth Amendment right to remain silent and not testify, but he chose to testify. He testified that he lives with Young and had for approximately four years. He said the only time he spanked one of the children was two years ago when A.P. had gone to the bathroom in her pants but that he no longer spanks the children. He explained that he was sometimes responsible for watching the children; usually two days a week. He testified that there was a prior incident in which four-month-old K.B.2 fell off an ottoman while she was under his care. When Bryant was asked how K.B.2 died, he first denied knowing what happened; just that "she was sick." He further testified that on the day of her death, K.B.2 woke up around 10:30 a.m., and he fed her at 11:00 a.m. He explained that she vomited after he fed her, but he felt it was not bad enough to alert Young at work. Due to an incident at work, Young came home early. Bryant testified that they noticed K.B.2 did not look right, and they believed she was "drowsy from throwing up." He recounted that it was Young's idea to go to the hospital because K.B.2 had been sick the past three days. Bryant said he thought he could still hear the child breathing when they arrived at the hospital. In addition, he testified that he is currently on probation stemming from a 2013 charge of possession and fleeing.
Next, Dr. Karen Farst testified as an expert witness regarding pediatric abuse. She testified that she reviewed K.B.2's skeletal surveys and worked with DHS to do evaluations on K.B.2's siblings. She explained that K.B.2's skeletal scan showed she had some bone fractures. Dr. Farst elaborated that her rib fractures occurred at least two weeks prior to her death but could not provide an approximate date of the fractures in K.B.2's legs. Dr. Farst opined that the fractures were unusual for a child at that age and typically only happened as a result of an inflicted injury but that the fractures would not have caused K.B.2's death. She testified that she did not believe that K.B.2 had any "obvious medical conditions" that could be the bases for her injuries. Lastly, she explained that K.B.2's injuries would not have been obvious and visible to Young.
Lisette Yang, a forensic interviewer for the Children's Protection Center, testified after Dr. Farst. Yang had previously interviewed A.P. and M.P. about the discipline in their home. M.P. said her legal father spanked her with a belt and that Bryant spanked her with an extension cord. M.P. did not say how often this occurred. M.P. also explained that Young spanked her, but not to the level administered by her father or Bryant. M.P. also detailed to Yang that on the day of the incident, K.B.2 was "fine and suddenly, she was not fine." A.P.'s interview with Yang was similar to that of M.P. Lastly, Yang testified that neither child indicated that she felt unsafe around the parents in this case.
Andrea Carter, an investigator for the Arkansas State Police Crimes Against Children Division, testified that she was assigned to this case and that she had received a preliminary report that indicated the cause of death would be ruled a *386 homicide as a result of blunt-force trauma to the abdomen.
Lastly, Cora Wilson, the assigned assessment worker for DHS, testified. Wilson testified with regard to the family's history with DHS prior to this case opening. She testified that before to this incident, the agency only had received two hotline calls-one in 2015 and the other in 2017. Wilson summarized DHS's involvement with this family in her affidavit in support of the dependency-neglect petition, which included the following:
Ref# 1854736 (April 7, 2017) A report was accepted for abuse involving [K.B.2] and unknown offender. The report states [K.B.2] had two black eyes and her jaw was swollen and [K.B.2] seemed very tired. [Bryant] said that he didn't know what happened but on Thursday, [Bryant] is saying that [K.B.2] fell off of an ottoman. Report was unsubstantiated.
Ref# 1725636 (January 15, 2015) The report listed [M.P. and A.P.], AO-Kwuan Patton [sic]. The report states [Young's] boyfriend punches the children on the head. Also the boyfriend whipped [A.P.] with a phone cord, leaving welts on her legs. The report was substantiated and an open Protective Services. The case was open and the following services provided: monthly home visits and parenting although the parenting was not completed. The case was closed on November 15, 2015.
At the conclusion of the testimony, the circuit court ruled from the bench that the children were dependent-neglected. The court explained that the major factors it considered were the unexplained death of K.B.2 and also the history given to Yang of the corporal punishment administered on A.P. and M.P. In its adjudication order, the circuit court found that the children were dependent-neglected based on the following:
[P]hysical abuse and parental unfitness of all of the juveniles, by the mother, physical abuse of all the juveniles by Kwuan Bryant, and parental unfitness of [K.B.1], by her father, Kwuan Bryant, based upon the unexplained death of [K.B.2], ... and the history of using corporal punishment by the mother and Kwuan Bryant, on the juveniles.
Following the entry of the adjudication order, Young filed a motion to reconsider detailing that the findings of physical abuse and parental unfitness against her were contrary to the oral rulings made at the adjudication hearing and not supported by the evidence. The motion also pointed out that the adjudication order did not mention that Young was not present when K.B.2 was harmed. The motion was not ruled on and was deemed denied after thirty days. This timely appeal followed.
Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Supp. 2017). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325. In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Samuels v. Ark. Dep't of Human Servs. , 2016 Ark. App. 2, at 6-7, 479 S.W.3d 596, 600. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. Id. The focus of an adjudication hearing is on the *387 child, not the parent; at this stage of a proceeding, the Juvenile Code is concerned with whether the child is dependent-neglected. Id. at 7.
While the focus of an adjudication hearing is on the child, a parent must appeal adverse rulings; otherwise, the parent will be precluded from appellate review of those rulings in an appeal from a subsequent order, such as a termination order. Ashcroft v. Ark. Dep't of Human Servs. , 2010 Ark. App. 244, at 8, 374 S.W.3d 743, 747. We have previously explained that
the process through which a parent or parents travel when a child is removed from their home consists of a series of hearings-probable cause, adjudication, review, no reunification, disposition, and termination. All of these hearings build on one another, and the findings of previous hearings are elements of subsequent hearings.
Osborne v. Ark. Dep't of Human Servs. , 98 Ark. App. 129, 136, 252 S.W.3d 138, 143 (2007).
On appeal, Young argues that the evidence was insufficient to support the court's finding that she had physically abused the children and was parentally unfit. She acknowledges that the status of dependency-neglect may remain with regard to Bryant's acts, but she asserts that the court erred when it specifically found that she was actually the offender of abuse and parental unfitness. Young correctly acknowledges that if the findings against her are permitted to stand, they could provide the basis for the termination-of-parental-rights ground that allows termination of parental rights when a circuit court has adjudicated a juvenile dependent-neglected as a result of abuse that could endanger the life of a child. Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a ).
A dependent-neglected juvenile is one at substantial risk of serious harm as the result of, among other things, abuse or neglect. See Ark. Code Ann. § 9-27-303(18)(A)(ii) & (v). Arkansas Code Annotated section 9-27-303(3)(A) defines "abuse" by a parent or guardian, in pertinent part, as any injury that is at variance with the history given or any nonaccidental physical injury. "Parental unfitness" is not specifically defined in the Juvenile Code, but case law is clear that it is not necessarily predicated on the parent's causing some direct injury to the child in question because the Code's paramount concern is protecting dependent-neglected children in general. Bean v. Ark. Dep't of Human Servs. , 2016 Ark. App. 350, at 6, 498 S.W.3d 315, 318-19.
Here, the testimony and affidavit of facts do not support the circuit court's findings as to Young. While this court may use a circuit court's oral pronouncements to determine the intent behind its written orders, see Porter v. Ark. Dep't of Human Servs. , 2010 Ark. App. 680, 378 S.W.3d 246, we are unable to do so here. As noted in Young's motion for reconsideration, the circuit court's findings from the bench are in contrast with its findings reduced to writing in the adjudication order.
We first address the circuit court's finding of abuse. At the close of evidence, the circuit court said it was making a physical-abuse finding but not a parental-unfitness finding at that time. At that time, the major factors the court considered were the unexplained death of K.B.2 and the history of corporal punishment by the fathers. Neither of these findings pertained to Young. First, as to K.B.2's unexplained death, the circuit court stated that it was convinced that the "mother was not home, at least on the morning when this occurred or when the child became symptomatic." Thus, it is not implausible that *388 Young, who was not present, could not provide a history for an event for which she did not witness. Next, the circuit court mentioned nothing of corporal punishment by Young; it named only the fathers. While we do have testimony from Yang that Young had previously spanked M.P. (though it was not to the extreme as Bryant's use of corporal punishment), the order purports that Young abused all of her children, which is simply not supported by the record. Further, we have testimony that the children did not feel unsafe around Young. Therefore, we reverse the circuit court's physical-abuse finding as to Young.
We next address the circuit court's finding of parental unfitness as to Young. While we do have evidence of DHS involvement with this family, none of it supports a finding of unfitness against Young. The 2017 DHS report was unsubstantiated and involved Bryant; the record made no mention of Young's appearance or involvement when K.B.2 fell off the ottoman. The 2015 DHS report, while substantiated, was closed less than a year later. Again, that report involved Bryant's using corporal punishment against the children and did not mention Young's harming the children. While evidence supported that K.B.2 was abused multiple times before her death, Dr. Farst testified that K.B.2's injuries would not have been obvious and visible to Young. The adjudication order's findings do not distinguish which facts specifically evidence Young's parental unfitness, and the record simply does not support the finding.
On the facts of this case, we cannot conclude that the allegations against Young were proved by a preponderance of the evidence. Thus, we reverse the physical-abuse and parental-unfitness findings as they relate to Young. We do hold that the record supports the dependency-neglect status of the children and that this family could benefit from services, so the adjudication itself is affirmed.
Affirmed in part; reversed in part.
Whiteaker and Hixson, JJ., agree.

The circuit court reasoned that Bryant was not entitled to an attorney because the children had not been removed from his custody; rather, they had been removed only from the mother's custody.