Cite as 2020 Ark. App. 72

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-799

| | |
|---|---|
| EMILY REEVES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered:** February 5, 2020<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 44JV-19-49]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Emily Reeves appeals the Washington County Circuit Court's adjudication of her daughter, J.M. (09/22/12), as dependent-neglected. We affirm.

I. *Relevant Facts*

On April 24, 2019, the Arkansas Department of Human Services (Department) filed a petition for an ex parte emergency order for protection of J.M. In the petition, the Department explained that on April 20, J.M. was a passenger in Reeves's car when she was pulled over after Trooper Jeff Richardson of the Arkansas State Police observed Reeves speeding and driving over the center line. Reeves was charged with driving while intoxicated, second-degree endangering the welfare of a minor, fraud of secure narcotic drugs or prescriptions, and driving left of center. At the scene, Reeves was given a breathalyzer test that resulted in .166 reading, and she stated that she had drunk two beers

and half a glass of wine. J.M. was released to her father, Phillip Mason, who shares joint custody with Reeves.

The circuit court entered an order for protection and found probable cause to believe that J.M. is dependent-neglected. The order granted full custody to Mason and supervised visitation with Reeves for one hour once a week. Reeves immediately began complying with the case plan and rapidly progressed. The circuit court lifted the no-contact order and expanded visitation.

At the adjudication hearing on July 26, Trooper Richardson testified that on April 20, he pulled Reeves over for speeding, driving left of the center line, and almost hitting the vehicle in front of her. Richardson testified that Reeves's eyes were bloodshot, he could smell alcohol when he approached her, and that she blew a .15[1] when he administered the portable breathalyzer test. Richardson also explained that there was an unlabeled pill bottle in the car containing what was later identified as a Schedule IV substance. Richardson testified that J.M. was a passenger in the car that evening.

Caseworker Whitney Widner testified that Reeves had complied with the case plan, tested negative for drugs and alcohol, and was doing well in counseling; however, she recommended that the court continue custody with Mason, put a transition plan in place, and expand Reeves's visitation. Widner testified that during counseling, Reeves explained that at the time of removal, she had been using alcohol more than she had in the past and

---

[1]In the affidavit, the result of the field-sobriety test is reported as .166. The discrepancy is immaterial to our analysis.

2

she had been using Tramadol without a prescription; and though Reeves had demonstrated short-term success in the brief time the case had been open, "longevity" and "following through long term" were important in this case. Widner also clarified that when Reeves was arrested, the Department released J.M. to Mason's custody when it was discovered that Mason and Reeves share joint custody. When the Department released J.M. to Mason, Widner explained, the Department no longer had custody of J.M. The Department clarified that "Ms. Widner wasn't on the scene that night, but the child was never taken into physical custody. It was returned . . . to the father at the scene."[2]

Mason testified that he and Reeves coparent well, and he did not have any concerns about Reeves's sobriety. He felt that she had accepted responsibility and "learned her lesson." Reeves testified that she remembered the events of April 20 and that she was immediately very upset with herself for the situation. Reeves explained that she accepted responsibility for her behavior and that she had attended and benefited from alcohol-and-substance-abuse counseling, MADD and parenting classes, and weekly counseling.

The attorney ad litem asserted that Reeves had successfully availed herself of all Department services, and J.M. was no longer dependent-neglected.

---

[2]At times during the hearing, the attorney ad litem touched on a possible argument that the Department did not make reasonable efforts to prevent removal of J.M.; however, at the close of the hearing, the court stated that J.M. had never been in Department custody; therefore, "there was no reasonable efforts [to prevent removal] because it wasn't even needed," and the ad litem agreed.

At the close of the hearing, the court stated that it must "follow the law that says if a parent places a child in a substantial risk of serious harm, which mom's actions did, that the child is dependent-neglected." The court further observed that "even though I have a moral dilemma here about, well, I don't want to find J.M. dependent-neglected, the Department has made, by a preponderance of the evidence, that for that time, that mom exposed her to danger. That has since passed. I adjudicate her to be dependent-neglected."

In the subsequent order, the court found J.M. dependent-neglected, specifically relying on Trooper Richardson's testimony regarding the events leading up to Reeves's arrest on April 20. The court also found that Reeves had complied with the case plan and is a fit parent. The circuit court reinstated joint custody and closed the case. Reeves timely filed a notice of appeal.

## II. *Discussion*

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. *Bean v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 350, 498 S.W.3d 315. Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(A) (Supp. 2019). We will not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Bales v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 351, 552 S.W.3d 497. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Seago v. Ark. Dep't of Human Servs.*,

4

2009 Ark. App. 767, 360 S.W.3d 733. In an adjudication hearing, the focus is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Id.*

Reeves asserts that the circuit court erred by finding that J.M. is dependent-neglected because the Department had the burden of proving "continued dependency-neglect" at the adjudication hearing. She argues that the events of April 20 that led to J.M.'s removal from her custody constituted an isolated incident that did not result in harm to J.M. She asserts that because the circuit court found there was no continued dependency-neglect, the Department did not prove that "at the time of the adjudication hearing, there was no proof of continued dependency-neglect if there ever was proof period." Reeves's argument is not well taken.

A dependent-neglected juvenile includes one who is at substantial risk of serious harm because of abuse, neglect, or parental unfitness to the juvenile or to a sibling. *Callison v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 592, at 4, 446 S.W.3d 210, 213. "Neglect" means those acts or omissions of a parent that constitute, among other things, a failure to appropriately supervise the juvenile that results in the juvenile's being left alone in inappropriate circumstances, creating a dangerous situation or a situation that puts the juvenile at risk of harm. Ark. Code Ann. § 9-27-303(36)(A)(vii)(*b*).

The circuit court's finding that the allegation in the petition that Reeves neglected J.M. is supported by a preponderance of the evidence. As stated above, adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. *Bean*, *supra*. In the petition for dependency-neglect, the Department alleged that J.M. was

at a substantial risk of serious harm as the result of parental neglect and unfitness. Specifically, the Department alleged in the affidavit supporting the petition that Reeves had driven while intoxicated with J.M. in the car and that she had been charged with a crime related to possession of a narcotic without a prescription. Trooper Richardson testified at the hearing that he pulled Reeves over because he saw her speeding and driving over the center line. Richardson testified that he administered a field-sobriety test, and Reeves's blood-alcohol level was twice the legal limit. Reeves did not contest Richardson's account of the events that evening.

Reeves cites *Johnson v. Arkansas Department of Human Services*, 2014 Ark. App. 244, 413 S.W.3d 549, to support her argument that J.M. is no longer—or perhaps never was—at substantial risk of serious harm. *Johnson* is distinguishable from the instant case. In *Johnson*, the petition alleged that an adult living with the mother and her children "popped" a child over the head with palm of his hand. Our court reversed the circuit court's adjudication of dependency-neglect, holding that a single, noninjurious incident was not a basis for finding that the child and two minor siblings were dependent-neglected. Here, there is no question that driving while intoxicated with a child in the car creates a dangerous situation and places the child at substantial risk of serious harm. The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. *Goodwin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 599, at 3, 445 S.W.3d 547, 549. The term "substantial risk" speaks in terms of future harm. *Id.* It is undisputed that the allegation in the petition that Reeves drove while intoxicated with J.M. in the car is true;

6

thus, the court's finding that Reeves created a dangerous situation putting J.M. at a risk of harm is not clearly erroneous.

Reeves also cites *Tapp v. Arkansas Department of Human Services*, 2017 Ark. App. 216, 518 S.W.3d 725, to support her assertion that the circumstances that exist at the time of the adjudication hearing dictate whether the child is dependent-neglected. In that case, our court affirmed the circuit court's adjudication of dependency-neglect, holding that the dependency-neglect statute requires proof of the allegations in the petition at the time of the adjudication hearing. *See* Ark. Code Ann. § 9-27-327(a)(1)(A). *Tapp* is distinguishable from the instant case. In *Tapp*, M.H.'s custodian, her grandmother, allowed M.H. to visit the inappropriate, filthy, and dangerous home of her putative father, Larry. Tapp explained that she suspected Larry of using drugs and allowing M.H.'s boyfriend to live there, but she had never checked the appropriateness of the home because she and Larry did not get along. At the time of removal, Tapp was living in appropriate housing. By the time the adjudication hearing took place, Tapp had moved, and she was renovating a storage shed as a living space for herself and M.H. The structure had no utilities or any place to sleep, and Tapp slept and used the bathroom at her grandson's house next door. The circuit court adjudicated M.H. dependent-neglected and found that M.H. was at substantial risk of serious harm because Tapp failed to appropriately supervise M.H., protect M.H. from Larry's abuse, and provide shelter that did not pose a risk to M.H.'s health and safety. *Id*. at 3, 518 S.W.3d at 727. Our court affirmed the circuit court order, holding that there was sufficient evidence to support the adjudication of dependency-neglect. Our court held that Tapp's inability to provide safe

housing at the time of the adjudication hearing and her past decision to repeatedly allow M.H. to stay in Larry's unsafe and inappropriate home constituted neglect.

The instant case and *Tapp* are simply inapposite. Here, between removal and the adjudication hearing, Reeves had complied with the case plan and had begun remedying the conditions that caused J.M.'s removal. *Tapp* does not present similar facts from which this court may draw an analogy, and it does not support Reeves's assertion that because she complied with the case plan before the adjudication hearing there is no evidence to support a finding of dependency–neglect.

As a final note, Reeves characterizes the circuit court's statement that it must "follow the law" even though it felt a certain "moral dilemma" about the situation as the court's failure to make findings regarding the allegations in the petition based on the proof presented at the hearing. We disagree. As we stated above, the circuit court exercised its discretion by weighing the evidence and testimony presented at the adjudication hearing and finding the allegations to be true.

We find no error in the circuit court's determination that the allegation in the petition for dependency–neglect is true.

Affirmed.

SWITZER and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.